UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| JUDY F. MULVIHILL, individually, and on behalf of all other individuals similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM and JOHN DOES 1-10,<br><br>    Defendant. | Case No. |

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff, Judy F. Mulvihill, individually, and on behalf of all others similarly situated, by and through her undersigned counsel, complaining of Charter Communications, Inc. d/b/a Spectrum ("Defendant") and John Does 1-10 as follows:

## NATURE OF ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

6. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Piedmont, South Carolina.

7. Defendant is a prominent cable and internet service provider that provides cable and internet services to more than 31 million customers in 41 states, including the State of South Carolina.

8. Defendant maintains its principal place of business in Stamford, Connecticut.

9. John Does 1-10 are third party vendors that Defendant utilizes to place outbound calls on behalf of Defendant. The identities of John Does 1-10 are unknown to Plaintiff at this time and will be identified through discovery.

10. At all times relevant, Defendant had an agency relationship with John Does 1-10 whereby Defendant (as the principal) had the right to control and direct the activities of John Does 1-10 (as the agents) and John Does 1-10 (as the agents) had the authority to act on behalf of Defendant. Accordingly, Defendant, as the principal of John Does 1-10, is liable for the acts of its agents John Does 1-10.

## FACTUAL ALLEGATIONS

11. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 8838.

12. At all times relevant, Plaintiff's number ending in 8838 was assigned to a cellular telephone service.

13. At all times relevant, Plaintiff was financially responsible for her cellular telephone services.

14. In March 2023, Defendant started placing phone calls to Plaintiff's cellular phone number in an attempt to contact an individual unknown to Plaintiff named "Zachary Kelly".

15. Shortly after the calls began, Plaintiff answered a call from Defendant.

16. Upon answering Defendant's call, Plaintiff was greeted with an artificial and/or prerecorded voice prior to being transferred to a live representative.

17. Once Plaintiff was connected with a live representative, Plaintiff (1) informed the representative that she is not the individual that Defendant was trying to contact; (2) notified Defendant that it was calling the wrong number; and (3) requested that Defendant cease its calls to Plaintiff's cellular phone number.

18. Despite Plaintiff's request that Defendant cease its misguided calls, Defendant continued pounding Plaintiff with calls in an effort to contact an unknown third party.

19. In some of the calls that Plaintiff did not answer, Defendant would leave prerecorded voicemail messages ("robocalls") stating:

> "This is a pending service interruption warning from Spectrum for the account belonging to Zachary Kelly. Please call us back immediately at 1-844-206-9035 to help maintain your Spectrum service. Again, this is Spectrum calling from 1-844-206-9035 about a pending service interruption. If we have reached a wrong number, please visit www.spectrum.com/remove for more information. Thank you."

20. In other calls that Plaintiff did not answer, Defendant would leave prerecorded voicemail messages stating:

> "This is Spectrum with an automated message about an important change in the status of the account belonging to Zachary Kelly. Please call us back within the next twenty-four hours at 1-844-206-9035. Again, this is Spectrum calling from 1-844-206-9035. If we have reached a wrong number, please visit www.spectrum.com/remove for more information. Thank you."

21. It was clear to Plaintiff that Defendant's voicemails utilized an artificial and/or prerecorded voice because (1) all voicemails contained one of the aforementioned prerecorded messages; (2) all voicemails were approximately the same duration; (3) the voicemails were all monotone and were conspicuously not left by a live representative; (4) all voicemails directed Plaintiff to call a toll free number to speak to an unidentified representative; and (5) some voicemails explicitly stated it was an "automated message."

22. Upon information and belief, the aforementioned prerecorded voicemail messages are stock voicemails that automatically play if Defendant's calls are not answered.

23. In total, Defendant placed no less than forty-two (42) robocalls to Plaintiff's cellular phone number from March 2023 through the present, including calls from the phone number (844) 206-9035.

24. At no point in time did Plaintiff provide Defendant with consent to place calls to her cellular phone number ending in 8838 in connection with an account held by "Zachary Kelly."

## DAMAGES

25. Plaintiff values her time, privacy, and solitude.

26. Defendant's invasive robocalls have disrupted Plaintiff's daily life.

27. Defendant's misguided robocalls have invaded Plaintiff's privacy and have caused Plaintiff damages, including: aggravation that accompanies unwanted robocalls, increased risk of personal injury resulting from the distraction caused by the misguided robocalls, wear and tear to Plaintiff's cellular phone, unauthorized trespass of Plaintiff's cellular phone, temporary loss of use

4

of Plaintiff's cellular phone, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular phone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

28.     Moreover, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize her cellular phone while her phone was ringing.

29.     As a result of Defendant's refusal to cease its invasive robocalls, Plaintiff was forced to change her cellular telephone number to escape Defendant's robocalls.

## **CLASS ALLEGATIONS**

30.     All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

31.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals residing in the United States (1) to whom Defendant placed, or caused to be placed, a call; (2) directed to a number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) in connection with a third party's account; (5) without his/her consent; (6) within the four years preceding the date of the original complaint through the date of class certification.

32.     The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) individuals who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such

excluded individuals; and (6) individuals whose claims against Defendant have been fully adjudicated and/or released.

### A. Numerosity

33. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

34. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and can only be determined through targeted discovery.

35. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

36. The members of the Putative Class are identifiable because their telephone numbers can be identified in business records maintained by Defendant.

### B. Commonality and Predominance

37. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class.

38. Those questions predominate over any questions that may affect individual members of the Putative Class.

### C. Typicality

39. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendant's conduct.

### D. Superiority and Manageability

40. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

41. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

42. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

43. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

### E.   Adequate Representation

44. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

45. Plaintiff has no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiff.

46. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)**
**(On behalf of Plaintiff and the Members of the Putative Class)**

47. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

48. Plaintiff is a "person" as defined by 47 U.S.C. §153(39) because she is an individual.

49. Defendant is a "person" as defined by 47 U.S.C. §153(39) because it is a corporation.

50. Section 227(b)(1)(A)(iii) of the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an *artificial or prerecorded voice*" to "any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2344 (2020) (emphasis added).

51. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than forty-two (42) calls to Plaintiff's cellular phone number utilizing an artificial or prerecorded voice without Plaintiff's consent.

52. As pled above, Defendant utilized an artificial and/or prerecorded voice that automatically played upon Plaintiff answering the call or the call reaching Plaintiff's voicemail.

53. As pled above, Plaintiff suffered damages as a result of Defendant's unlawful robocalls.

54. Upon information and belief, Defendant does not maintain adequate policies and procedures to ensure compliance with the TCPA.

55. Upon information and belief, Defendant has failed to implement protocols to ensure that misguided calls cease.

56. Instead of updating its records/systems to cease robocalls to unintended recipients, Defendant blatantly ignores the unintended recipients' requests that the calls cease, resulting in the continuation of invasive robocalls.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. a judgment in Plaintiff's favor finding that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

C. an order enjoining Defendant from placing further unlawful calls to Plaintiff and the members of the Putative Class;

D. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each TCPA violation;

E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each TCPA violation; and

F. an award of such other relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: July 21, 2023                              Respectfully submitted,

/s/ *J. Paul Porter*
**J. PAUL PORTER, ESQ.**
Bar No.: 11504
CROMER BABB PORTER & HICKS, LLC
P.O. Box 11675
Columbia, SC 29211
Phone (803) 799-9530
Fax (803) 799-9533
Paul@CBPHLaw.com

   *and*

Mohammed O. Badwan (PHV forthcoming)
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8180
mbadwan@sulaimanlaw.com